**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**ANTHONY TERRELL BYRD,**

    **Petitioner,**

                                         Case No. 1:04-cv-785
v.                                         Hon. Robert J. Jonker

**KURT JONES,**

    **Respondent.**

_____/

**REPORT AND RECOMMENDATION**

Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**I.    Background**

Petitioner was convicted by a jury of assault with intent to rob while armed, M.C.L. § 750.89, and possession of a firearm during the commission of a felony, M.C.L. § 750.227b. The court sentenced petitioner as a third-offense habitual offender to a term of nine to twenty-five years' imprisonment for the assault with intent to rob while armed conviction, to be preceded by the mandatory two-year sentence for his felony-firearm conviction.

Petitioner's conviction arose from the following circumstances:

> The record reveals that defendant entered complainant's truck, produced a small-caliber handgun, and demanded that complainant drive. The complainant testified that as he drove, defendant, while still holding the gun, stated that he wanted $5. After learning that complainant had no money, defendant ordered complainant to pull into an alley and when complainant refused, defendant threatened to "cap" him. When complainant stopped the truck pursuant to defendant's request, complainant jumped out, ran a short distance from the truck, and demanded that defendant get out of the truck. Defendant eventually left the truck after rummaging through the glove box. Further, another witness testified that less than two hours

> after the incident with complainant, defendant similarly entered his vehicle uninvited, demanded a ride, and when the witness refused, stole several items from the car before fleeing

*People v. Byrd*, No. 223713, slip op. at 2 (Mich. App. April 20, 2001).

Petitioner presented the following issues and sub-issues in his direct appeal:

I. Is the evidence insufficient for guilt on the assault with intent to rob while armed charge?

II. Did the trial court reversibly err in admitting similar acts evidence?

III. Did the trial court abuse its discretion and reversibly err in sentencing [petitioner] to a prison term of nine years to 25 years on the habitual offender 3d supplement arising out of the assault with intent to rob while armed conviction?

*See* docket no. 15. The Michigan Court of Appeals affirmed the conviction. *Byrd*, No. 223713. Petitioner raised the same issues in his application for leave to appeal to the Michigan Supreme Court, which denied the application, stating that "we are not persuaded that the questions presented should be reviewed by this Court." *People v. Byrd*, No. 119397 (Mich. Oct. 29, 2001).

Petitioner then filed a motion for relief from judgment in the trial court pursuant to MCR 6.500 *et seq.* raising two issues:

[IV.] The trial court failed to order a competency hearing.

[V.] The trial court proceeded without jurisdiction on a charge that was not filed in the original complaint.

*See* docket no. 17. The trial court denied Issue IV because petitioner he did not provide good cause for failing to raise this issue on appeal. *People v. Byrd*, No. 99-43569-FC (Musk. Cir. Ct. Nov. 1, 2002). In addition, the court denied petitioner's jurisdictional claim raised in Issue V as "false," observing that petitioner's claim was "unnecessarily formalistic." *Id.* The trial court also denied petitioner's motion for reconsideration. *People v. Byrd*, No. 99-43569-FC (Nov. 20, 2002).

Petitioner filed leave to appeal this order to the Michigan Court of Appeals, restating Issues IV and V as follows:

[VI.]  Did the trial court error in applying the cause and prejudice analysis to [petitioner's] competency claim where [petitioner] was incompetent at the time of conviction and sentencing and therefore could not waive the claim?

[VII.]  Was [petitioner] denied due process of law guaranteed him by the Fifth and Fourteenth Amendments of the United States Constitution, and Article 1 § 17, of the Michigan Constitution when the trial court failed to order a competency hearing before trial?

[VIII.]  Was [petitioner] denied due process of law guaranteed him by the Fifth and Fourteenth Amendments of the United States Constitution, and Michigan Constitution Article 1 § 17, when the trial court proceeded on charges that were not filed in the original complaint without properly obtaining jurisdiction over the charges?

*See* docket no. 17.

The Michigan Court of Appeals denied leave "for failure to meet the burden of establishing entitlement to relief under MCR § 6.508(D)." *People v. Byrd*, No. 252024 (Mich. App. March 15, 2004). Petitioner raised issues VI, VII and VIII in his application for leave to appeal to the Michigan Supreme Court, which also denied the application because petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Byrd*, No. 126044 (Mich. Oct. 25, 2004).

Petitioner does not contest any of the state court rulings raised in his direct appeal. Rather, he has limited his habeas petition to the the issues raised in his motion for relief from judgment under MCR § 6.500 *et seq.*:

[VI.]  The trial court erred in applying the cause and prejudice analysis to [petitioner's] competency claim where [petitioner] was incompetent at the time of conviction and sentencing and therefore could not waive the claim.

[VII.]  [Petitioner] was denied due process of law guaranteed him by the Fifth and Fourteenth Amendments of the United States Constitution, and Article 1 § 17, of the Michigan Constitution when the trial court failed to order a competency hearing before trial.

[VIII.]  [Petitioner] was denied due process of law guaranteed him by the Fifth and Fourteenth Amendments of the United States Constitution, and Michigan Constitution Article 1 § 17, when the trial court proceeded on charges that were not filed in the original complaint without properly obtaining jurisdiction over the charges.

## II. Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  Before petitioner may seek such relief in federal court, however, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies.  *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A).  Based on this record, I believe petitioner has satisfied the exhaustion requirements as to these three habeas claims.

Where the state court has adjudicated a claim, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

      (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established Federal law if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decided the case differently than a Supreme Court decision based upon a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Lopez v. Wilson*, 426 F.3d 339, 341 (6th Cir. 2005) (*rehearing en banc*). An unreasonable application of clearly established Federal law occurs "when the state court identified the correct legal principle from the Supreme Court but unreasonably applied the principle to the facts of the case before it." *Id.*

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001).

### III.   Petitioner's alleged improper bindover

Petitioner contends in Issue VIII that the trial court "lacked jurisdiction to hear the charge of assault with intent to rob while armed, because the magistrate bound over only on larceny from a person." Petitioner's Memorandum at 12. The record reflects that after petitioner waived his right to a preliminary examination in the state district court, he twice moved to remand his case to the district court for the examination. *See* Motion Trans. (Oct. 4, 1999); Trial Trans. I at 62-94. The state circuit court denied both motions. *Id.* It is unnecessary for the court to address the merits

of this issue, because a claim of improper bindover for trial is not cognizable on federal habeas review. "[A]lthough a suspect who is presently detained may challenge the probable cause for that confinement, a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause." *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975). Accordingly, petitioner is not entitled to federal habeas relief on this ground.

**IV. Petitioner's competency claims raised in Issues VI and VII are barred by the doctrine of procedural default.**

**A. Petitioner's claims**

Petitioner raises both a substantive competency claim (Issue VI) and a procedural competency claim (Issue VII). These claims are based upon statements made by his counsel at the the October 4th hearing and a stipulation on the first day of trial. At the hearing, petitioner's counsel stated that "[i]f called to testify, Mr. Byrd would testify that he has suffered through most - or all of his life from a learning disability" and that he "relies on the assistance of family members to help him as far as reading documents are concerned or in conducting his own personal business." Motion Trans. (Oct. 4, 1999) at 3-4. The trial judge found no reason to revoke petitioner's waiver and conduct a preliminary examination. *Id.* at 10-11.

On the first day of trial, petitioner renewed his motion to remand for a preliminary hearing, the parties stipulated to the fact that petitioner cannot read and the trial judge heard testimony from petitioner and his attorney regarding the voluntariness of the waiver. Trial Trans. I at 62-94. During the hearing, petitioner's counsel argued that "an experienced cross-examiner like [the prosecutor] could probably get Mr. Byrd to say just about anything, if the question is phrased right," and that "we are not dealing with a person who is well-versed in reading and writing the English language." *Id.* at 87-90. The court denied the motion, finding that petitioner "was able to

offer the Court a pretty accurate explanation of the circumstances" occurring on the date he signed the waiver, and "that the waiver was knowing and voluntarily made, despite the admitted lack of reading ability here." *Id.* at 92-93.

Petitioner also relies on a paper which he identified as page 8 from an undated pre-trial investigation report, which states that he was "kicked out of school due to attendance problems," that he was placed in alternative programming in the eighth grade due to his learning disability, that he receives disability payments due to his learning disability, and that he can neither read nor write. Appendix G attached to petition. While petitioner was represented by counsel at both the trial and on appeal, neither counsel indicated to the state courts that he was not competent to stand trial due to his illiteracy. On the contrary, petitioner had 16 prior convictions, ranging from retail fraud to aggravated assault. Sent. Trans. (Nov. 15, 1999) at 12-13.

**B.     Procedural default**

Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A procedural default "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice." *Gray v. Netherland*, 518 U.S. 152, 162 (1996). Not every state procedural rule will warrant application of the procedural default doctrine. Only a procedural rule that was "'firmly established and regularly followed' by the time as of which it [was] to be applied," *Ford*

*v. Georgia*, 498 U.S. 411, 424 (1991), will support application of the doctrine. "For a habeas claim to be procedurally defaulted on the basis of a state procedural rule, the petitioner must have violated a procedural rule, but the state court must also have based its decision on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000).

The Michigan Supreme Court denied petitioner's application for leave to appeal both his substantive competency claim and his procedural competency claim because he failed to meet the burden of establishing entitlement to relief under MCR 6.508(D). The Sixth Circuit has held that MCR 6.508(D) is a valid procedural bar for habeas purposes. *See Canty v. Cason*, No. 02-2030, 2003 WL 152322 (6th Cir. Jan. 16, 2003); *Burroughs v. Makowski*, 282 F.3d 410, 414 (6th Cir. 2002); *Luberda v. Trippett*, 211 F.3d 1004, 1008 (6th Cir. 2000). Consequently, a habeas petitioner's claims are procedurally defaulted in those cases in which the Michigan Supreme Court expressly relies on MCR 6.508(D) in denying an application for leave to appeal. *Id.* As the last state court rendering judgment in the case, the Michigan Supreme Court's decision denying petitioner's claims on the basis of the state procedural bar of MCR 6.508(D) normally precludes habeas review. *See Burroughs*, 282 F.3d at 414; *Simpson*, 238 F.3d 407.

In order to address the procedural default issue with respect to petitioner's competency claims, the court needs to distinguish the two types of claims raised by petitioner. In *Hastings v. Yukins*, 194 F. Supp. 2d 659 (E.D. Mich. 2002), the court provided working definitions of a "substantive competency claim" and a "procedural competency claim":

> Competency claims can raise issues of both substantive and procedural due process. A petitioner may make a procedural competency claim by alleging that the trial court failed to hold a competency hearing after the defendant's mental competency was put in issue. To prevail on the procedural claim, a petitioner must establish that the state trial judge ignored facts which raised a "bona fide doubt" regarding petitioner's competency to stand trial. A petitioner can make a substantive

8

> competency claim by alleging that he was, in fact, tried and convicted while mentally incompetent. A petitioner raising a substantive claim of incompetency is entitled to no presumption of incompetency and must demonstrate his or her incompetency by a preponderance of the evidence. To succeed in stating a substantive incompetency claim, a petitioner must present evidence that creates a "real, substantial, and legitimate doubt" as to his or her competency to stand trial.

*Hastings*, 194 F. Supp. 2d at 670-71 (citations omitted).

As an initial matter, petitioner contends that the state court could not procedurally default his substantive competency claim, citing *Pate v. Robinson*, 383 U.S. 375, 384 (1966).[1] In *Pate*, the state argued that the defendant "deliberately waived the defense of his competence to stand trial by failing to demand a sanity hearing as provided by Illinois law." *Pate*, 383 U.S. at 384. The Supreme Court rejected this argument, stating that "it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently waive his right to have the court determine his capacity to stand trial." *Id.* (internal quotations omitted). In summary, petitioner contends the Supreme Court's statement in *Pate* precludes this court from procedurally defaulting a habeas petitioner's claim that he was incompetent to stand trial. I disagree.

First, unlike *Pate*, the present case does not involve a criminal defendant's waiver of a competency hearing or a competency defense. (The only waiver in the record is petitioner's waiver of a preliminary examination, which is not at issue in this habeas action. *See* discussion in ¶ III, *supra*.)

Second, I disagree with petitioner's proposition that the Supreme Court's statement in *Pate* can be read so expansively as to preclude a procedural default of the substantive competency issue. The court finds the opinion in *Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1306-07 (9th Cir.

---

[1] Petitioner does not raise a similar contention with respect to his procedural competency claim.

9

1996) instructive on this issue. In *Martinez-Villareal*, the court considered and rejected a habeas petitioner's contention "that mental incompetence claims can never be procedurally defaulted." *Martinez-Villareal*, 80 F.3d at 1306-07. The court pointed out that while such an "expansive reading of *Pate*" has been followed in some circuits, the rule is "untenable when applied to a case in which the [s]tate has raised the defense of procedural default rather than waiver." *Id.* at 1307.

> The analytical basis of a defense of waiver differs markedly from that of a defense of procedural default. A claim has been "waived" if it was not raised and if the standard of "voluntary relinquishment or abandonment of a known right []" . . . is met. In contrast, a finding of procedural default requires only that the claim was rejected by the state court on independent and adequate state procedural grounds. The petitioner can avoid the effect of a procedural default by showing cause and prejudice or manifest injustice.

*Id.*

Similarly, in *Smith v. Moore*, 137 F.3d 808 (4th Cir. 1998) the court distinguished the concept of "waiver" from "procedural default" in denying a petitioner's claim that "competence to stand trial cannot be waived":

> The Supreme Court has held that an incompetent defendant cannot knowingly or intelligently waive his right to have the court determine his competency. *See Drope v. Missouri*, 420 U.S. 162, 171, 95 S.Ct. 896, 903-04, 43 L.Ed.2d 103 (1975) (noting that competency is essential to a fair trial); *Pate v. Robinson*, 383 U.S. 375, 378, 86 S.Ct. 836, 838, 15 L.Ed.2d 815 (1966) (holding that the conviction of an incompetent defendant violates due process). Neither *Drope* nor *Pate*, however, support [the petitioner's] argument that competence to stand trial may be raised at any time. The rather unremarkable premise behind *Drope* and *Pate* is that an incompetent defendant cannot knowingly or intelligently waive his rights. *See Pate*, 383 U.S. at 384, 86 S.Ct. at 841. Unlike waiver, which focuses on whether conduct is voluntary and knowing, the procedural default doctrine focuses on comity, federalism, and judicial economy.
>
> In *Noble v. Barnett*, 24 F.3d 582 (4th Cir.1994), this Court specifically held that the rules governing habeas petitions had "nothing to do with the doctrine of waiver." *Id.* at 588. In so holding, this Court flatly rejected the argument that "a claim of incompetency to stand trial can never be forfeited." *Id.* at 587; *see also Clanton v. Muncy*, 845 F.2d 1238, 1240-41 (4th Cir.1988) (holding that a claim of

>   incompetency to stand trial may be defaulted). Although *Noble* dealt with the abuse of the writ doctrine, we believe that its holding applies with equal (if not greater) force here. Put simply, the rationale of *Drope* and *Pate* are inapposite in the context of a procedural default. *But see Bundy v. Dugger*, 816 F.2d 564, 567 (11th Cir.1987) (stating that "a defendant can challenge his competency to stand trial for the first time in his initial habeas petition"). Accordingly, we hold that a claim of incompetency to stand trial asserted for the first time in a federal habeas petition is subject to procedural default.

*Smith*, 137 F.3d at 818-19.

      I agree with the opinions expressed in *Martinez-Villareal* and *Smith*, which distinguish an incompetent defendant's ability to execute a valid waiver (as expressed in *Pate)* from the doctrine of procedural default applicable in habeas corpus cases.  If the court utilized the so-called "expansive reading of *Pate*" by exempting substantive competency claims from the procedural default doctrine, then the potential exists for every habeas petitioner to assert such a claim for the first time in his habeas petition, without ever raising the issue in the state court proceedings. *See generally, Hicks v. Straub*, 377 F.3d 538, 551 (6th Cir. 2004) (unexhausted claims are subject to the procedural default doctrine when the petitioner cannot cure the failure because state remedies are no longer available).  Allowing a petitioner to raise a competency claim for the first time in a federal habeas petition is contrary to the principles of comity, federalism and judicial economy that are essential to habeas corpus jurisprudence. *See, e.g.*, *Hill v. Mitchell*, No. 1:98-cv-452, 2006 WL 2807017 at *75 (S. D. Ohio Sept. 27, 2006) (neither the Supreme Court nor the Sixth Circuit adopted the petitioner's argument that a substantive claim of incompetence can never be procedurally defaulted; on the contrary, the Sixth Circuit decision in *Ludwig v. United States*, 162

F.3d 456, 458 (6th Cir.1998) seems to contradict this argument (holding that petitioner had procedurally defaulted a claim that he was not competent to enter a guilty plea)).[2]

These lower court decisions are consistent with the historical purpose of the writ of habeas corpus, i.e., to provide a limited ability to collaterally attack an otherwise valid state court conviction. In *Engle v. Isaac*, 456 U.S. 107 (1982), the Supreme Court explained this purpose and the relevance of the doctrine of procedural default:

> The writ of habeas corpus indisputably holds an honored position in our jurisprudence. Tracing its roots deep into English common law, it claims a place in Art. I of our Constitution. Today, as in prior centuries, the writ is a bulwark against convictions that violate "fundamental fairness." *Wainwright v. Sykes*, 433 U.S., at 97, 97 S.Ct., at 2511-2512 (STEVENS, J., concurring).
>
> We have always recognized, however, that the Great Writ entails significant costs. Collateral review of a conviction extends the ordeal of trial for both society and the accused. As Justice Harlan once observed, "[b]oth the individual criminal defendant and society have an interest in insuring that there will at some point be the certainty that comes with an end to litigation, and that attention will ultimately be focused not on whether a conviction was free from error but rather on whether the prisoner can be restored to a useful place in the community." *Sanders v. United States*, 373 U.S. 1, 24-25, 83 S.Ct. 1068, 1081-1082, 10 L.Ed.2d 148 (1963) (dissenting opinion). *See also Hankerson v. North Carolina*, 432 U.S., at 247, 97 S.Ct., at 2347 (POWELL, J., concurring in judgment). By frustrating these interests, the writ undermines the usual principles of finality of litigation.
>
> Liberal allowance of the writ, moreover, degrades the prominence of the trial itself. A criminal trial concentrates society's resources at one "time and place in order to decide, within the limits of human fallibility, the question of guilt or innocence." *Wainwright v. Sykes*, *supra*, 433 U.S., at 90, 97 S.Ct., at 2508. Our Constitution and laws surround the trial with a multitude of protections for the accused. Rather than enhancing these safeguards, ready availability of habeas corpus may diminish their sanctity by suggesting to the trial participants that there may be no need to adhere to those safeguards during the trial itself.

---

[2] In *Ludwig*, petitioner claimed that he was not competent to enter a guilty plea because he had been suffering from drug and alcohol abuse, had been seeing a psychiatrist for anxiety and had been prescribed medication. *Ludwig*, 162 F.3d at 458.

> We must also acknowledge that writs of habeas corpus frequently cost society the right to punish admitted offenders. Passage of time, erosion of memory, and dispersion of witnesses may render retrial difficult, even impossible. While a habeas writ may, in theory, entitle the defendant only to retrial, in practice it may reward the accused with complete freedom from prosecution.
>
> Finally, the Great Writ imposes special costs on our federal system. The States possess primary authority for defining and enforcing the criminal law. In criminal trials they also hold the initial responsibility for vindicating constitutional rights. Federal intrusions into state criminal trials frustrate both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 263-265, 93 S.Ct. 2041, 2066-2067, 36 L.Ed.2d 854 (1973) (POWELL, J., concurring).
>
> In *Wainwright v. Sykes*, we recognized that these costs are particularly high when a trial default has barred a prisoner from obtaining adjudication of his constitutional claim in the state courts. In that situation, the trial court has had no opportunity to correct the defect and avoid problematic retrials. The defendant's counsel, for whatever reasons, has detracted from the trial's significance by neglecting to raise a claim in that forum. The state appellate courts have not had a chance to mend their own fences and avoid federal intrusion. Issuance of a habeas writ, finally, exacts an extra charge by undercutting the State's ability to enforce its procedural rules. These considerations supported our *Sykes* ruling that, when a procedural default bars state litigation of a constitutional claim, a state prisoner may not obtain federal habeas relief absent a showing of cause and actual prejudice.
>
> Respondents urge that we should limit *Sykes* to cases in which the constitutional error did not affect the truthfinding function of the trial. In *Sykes* itself, for example, the prisoner alleged that the State had violated the rights guaranteed by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). While this defect was serious, it did not affect the determination of guilt at trial.
>
> We do not believe, however, that the principles of *Sykes* lend themselves to this limitation. The costs outlined above do not depend upon the type of claim raised by the prisoner. <u>While the nature of a constitutional claim may affect the calculation of cause and actual prejudice, it does not alter the need to make that threshold showing. We reaffirm, therefore, that any prisoner bringing a constitutional claim to the federal courthouse after a state procedural default must demonstrate cause and actual prejudice before obtaining relief</u>.

*Engle*, 456 U.S. at 126-129 (footnotes omitted) (emphasis added).

For these reasons, the court rejects petitioner's contention that his substantive competency claim is not subject to the doctrine of procedural default. Accordingly, I find that petitioner's Issues VI and VII are procedurally defaulted.

### B.     Cause for the procedural default

Habeas review of these claims is precluded unless petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law," or that a failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. "[T]he existence of cause for a procedural default must turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Petitioner fails to allege any "cause" for this default. In the absence of cause, it is unnecessary to consider any prejudice resulting from this alleged error of federal law.[3]

Petitioner's failure to demonstrate cause prevents federal review of his habeas claims unless the court's failure to do so will result in a "fundamental miscarriage of justice." *Coleman*,

---

[3] Even if petitioner had claimed his unidentified learning disability and illiteracy as "cause" for the procedural default, his claim would fail. "[I]n order for mental illness to constitute cause and prejudice to excuse procedural default, there must be a conclusive showing that mental illness interfered with a petitioner's ability to appreciate his or her position and make rational decisions regarding his or her case at the time during which he or she should have pursued post-conviction relief." *Holt v. Bowersox*, 191 F.3d 970, 974 (8th Cir. 1999). There is no "conclusive showing" in the record that these conditions interfered with petitioner's ability to make rational decisions regarding his case. His conditions fall far short of establishing legal incompetence. *See, e.g., Morgan v. Cain*, No. 05-6479, 2007 WL 3025056 at * 5 (E. D. La. Oct. 15, 2007) (testimony that petitioner was raised in a harsh and dysfunctional environment, had a learning disability, had a history of substance abuse and a conduct disorder "did not even begin to rise to the level necessary to give the trial court a basis for a reasonable doubt as to petitioner's capacity to proceed, much less to establish his legal incompetence"). Furthermore, nothing in the record suggests that petitioner's illiteracy invalidated his 16 prior convictions.

501 U.S. at 750.  In *Schlup v. Delo*, 513 U.S. 298, 321 (1995), the Supreme Court described the scope of the fundamental miscarriage of justice exception:

> To ensure that the fundamental miscarriage of justice exception would remain "rare" and would only be applied in the "extraordinary case," while at the same time ensuring that the exception would extend relief to those who were truly deserving, the Court explicitly tied the miscarriage of justice exception to the petitioner's innocence.

To meet the threshold requirement for actual innocence, a petitioner must persuade the court "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id*. at 329. *See, e.g. Paffousen v. Grayson*, No. 00-1117, 2000 WL 1888659 *3 (6th Cir. Dec. 19, 2000) ("[I]n order to establish actual innocence a petitioner must show that it is more likely than not that no reasonable juror would have convicted him"). Evidence sufficient to establish actual innocence "normally consists of exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not presented at trial." *Paffousen*, 2000 WL 1888659 at *3.  Petitioner offers no new evidence that he is actually innocent of the crime for which he was convicted.  Accordingly, he has failed to meet the fundamental miscarriage of justice exception.  Having failed to meet the exception under *Coleman*, petitioner's Issues VI and VII are procedurally barred and not subject to habeas review.

### V.     Recommendation

I respectfully recommend that petitioner's habeas petition be **DENIED**. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.


Dated:  November 21, 2007                                              /s/ Hugh W. Brenneman, Jr.
                                                                                              HUGH W. BRENNEMAN, JR.
                                                                                              United States Magistrate Judge


15

ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).